UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHRISTOPHER T. MOORE,

        Plaintiff,

  v.

HUB GROUP, INC.,

        Defendant.

Case No. 23-cv-2720-JPG

## MEMORANDUM AND ORDER

      This matter comes before the Court on its October 11, 2023, order for plaintiff Christopher T. Moore to show cause why the Court should not transfer this case to some other district pursuant to 28 U.S.C. § 1404(a) (Doc. 15). The Court remarked that this case seemed to have little, if anything, to do with the Southern District of Illinois. It further suggested that an appropriate transferee districts might be the United States District Court for the Eastern District of Missouri, where Moore is a resident and citizen; the United States District Court for Northern District of Illinois, where the defendant Hub Group, Inc. ("Hub") has its principal place of business; or the United States District Court for the District of Delaware, where Hub is incorporated. Moore responded to the order to show cause (Doc. 16).

      Thereafter, Hub filed a motion to dismiss Moore's complaint pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6) or, in the alternative, for a change of venue pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of Delaware (Doc. 17). Moore has responded to the motion (Doc. 22), and Hub has replied to that response (Doc. 25).

**I.**     **Background**

      It appears that the parties agree to the essential facts of the case. Hub is a transportation and logistics company that provides supply chain solutions to clients. Its headquarters is in Northbrook, Illinois.

Moore resides in the St. Louis, Missouri, area within the Eastern District of Missouri. When the events giving rise to this case began, Moore had worked for a Hub competitor but had decided to change his employment to begin working for Hub.

In connection with his employment by Hub, in late February 2023, he signed the Non-Competition, Non-Solicitation, and Confidentiality Agreement (the "Agreement") (Doc. 1-1). As its name suggests, the Agreement prohibits Moore from working for a Hub's competitor for a period (one year) after the end of his Hub employment in any geographic area in which Hub conducts business. Agreement ¶¶ 1(h), 4. The Agreement also provides that Delaware law shall govern disputes about the Agreement, including choice of law rules, and that exclusive jurisdiction over litigation concerning matters arising out of or in relation to the Agreement shall be in the state or federal courts in Delaware. Agreement ¶ 11(a).

Moore began working for Hub as a senior vice president on March 1, 2023. His work, although performed from Missouri, involved transactions in numerous states, including Illinois but not Delaware. His work exposed him to trade secrets and other confidential information belonging to Hub.

On June 13, 2023, Moore emailed his supervisor his formal resignation effective three days later. He now wishes to return to work for the competitor for which he worked prior to his employment by Hub. He asks this Court for a declaration that a return to his prior employer is permitted under the Agreement.

## II.     Jurisdiction

Although Hub does not challenge the Court's jurisdiction, the Court has an independent duty to determine whether cases are properly before it. *See Page v. Dem. Nat'l Comm.*, 2 F.4th 630, 634 (7th Cir. 2021) (citing *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900)), *cert. denied*, 142 S. Ct. 776 (2022); *Foster v. Hill*, 497 F.3d 695, 696-97 (7th Cir. 2007). Subject matter jurisdiction is always a threshold inquiry, especially where a declaratory judgment is sought because often plaintiffs

2

lack standing because they have not actually been injured before filing suit.

The doctrine of standing is a component of the Constitution's restriction of federal courts' jurisdiction to actual cases or controversies. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see* U.S. Const. art. III, § 2.  Standing contains three elements.

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical. . . .  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court . . . .  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (internal citations, quotations and footnotes omitted); *accord Sierra Club v. Franklin Cty. Power of Ill., LLC*, 546 F.3d 918, 925 (7th Cir. 2008).

The Court is satisfied that Moore's refraining from accepting employment at his prior employer—along with the loss of salary and benefits—because Hub has indicated it will enforce the noncompetition terms of the Agreement if he does, satisfies the standing requirement's actual or imminent injury caused by the Agreement and that Court action could redress this injury.

**III.    Analysis**

Hub seeks a transfer to the United States District Court for the District of Delaware consistent with the forum selection clause in the Agreement.

Moore objects because, other than Hub's citizenship there, Delaware has no involvement with the Agreement and has no substantial relationship to this dispute.  On the other hand, Hub is headquartered in Illinois and many of the matters Moore worked on for Hub involved Illinois.  He believes he should not be bound by the forum selection clause.  He believes it would lead to enforcement of the non-compete clause, which he argues would contravene the laws and public policies of Illinois, specifically, the Illinois Freedom to Work Act, 820 ILCS 90/1 to 90/97, and the principles underlying that statute.  One of those principles, he contends, is to make void a covenant not

to compete where an employee was only employed a short time. *See Fifield v. Premier Dealer Servs., Inc.*, 993 N.E.2d 938, 943 (Ill. App. Ct. 2013); 820 ILCS 90/5 (defining "adequate consideration" for a non-compete agreement to exclude employment of less than two years unless additional consideration such as sufficient professional or financial benefits was given). Moore further suggests Illinois has a great interest in this case and that the Southern District of Illinois is convenient for the parties and witnesses because it is a midpoint between his residence and Hub's headquarters. He maintains that litigating in Delaware would impose an undue burden on him. Finally, he points to his reason for leaving employment with Hub—he was asked to participate in terminating an employee because of union affiliation, which is against Illinois public policy.

A.      Propriety of Venue

The Court first addresses venue and then, if necessary, will address the substantive viability of Moore's complaint.

Motions for transfer of venue or for dismissal for improper venue are governed by the standards set forth in 28 U.S.C. §§ 1404[1] and 1406[2]. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27 (1988); *Willis v. Caterpillar Inc.*, 199 F.3d 902, 905 & n. 4 (7th Cir. 1999). To determine which of these statutes governs a particular situation, the Court must determine whether venue is proper under 28 U.S.C. § 1391. Section 1404 governs transfer when venue is proper; § 1406 governs transfer or dismissal when venue is improper. *Atl. Marine Constr. Co. v. United States Dist. Court for W. Dist. of*

---

[1]Section 1404 reads in pertinent part:
    (a) For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.
28 U.S.C. § 1404(a).

[2]Section 1406 reads in pertinent part:
    (a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.
28 U.S.C. § 1406(a).

*Tex.*, 571 U.S. 49, 55 (2013); *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964); *Hapaniewski v. Chi. Heights*, 883 F.2d 576, 579 (7th Cir. 1989).

Federal Rule of Civil Procedure 12(b)(3) provides a procedural mechanism for seeking dismissal of a case for improper venue. Under that rule, the Court assumes the plaintiff's allegations in the complaint are true unless they are contradicted by the defendant's affidavits. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352 (2004)). So the Court may look beyond the allegations in the complaint to consider the evidence. *Id.* at 810-11; *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 810 (7th Cir. 2011). But if there is a genuine dispute as to the facts, the Court must accept the plaintiff's facts as true. *Motorola Solutions, Inc. v. Hytera Commc'ns Corp. Ltd.*, 402 F. Supp. 3d 450, 454 (N.D. Ill. 2019).

Rule 12(b)(3) permits dismissal for improper venue, as does 28 U.S.C. § 1406(a). But § 1406(a) also permits the Court, in the interest of justice, to transfer a case in the wrong district to another district where it could have been brought. Generally, courts prefer transferring a case to a jurisdiction where venue is proper as opposed to dismissing it. Transfer avoids the "time-consuming and justice-defeating technicalities" required to refile a case in a proper venue. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962) (internal quotations omitted).

The Court begins with the question of whether venue is proper in the Southern District of Illinois. It is. Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). A defendant is deemed to reside in any judicial district where it is subject to personal jurisdiction for the particular case. 28 U.S.C. § 1391(c)(2); *see* 28 U.S.C. § 1391(d). Hub, the only defendant, resides in and is a citizen of Illinois, the state in which this court is located. Further, it likely resides in the Southern District of Illinois because it is likely subject to personal jurisdiction here in light of its business

activities here.  Therefore, venue is proper, and dismissal under Rule 12(b)(3) and 28 U.S.C. § 1406(a) is not warranted.  And because venue is proper in this district, any transfer must come, if at all, under 28 U.S.C. § 1404(a).  *See Stewart*, 487 U.S. at 27 (1988); *Van Dusen*, 376 U.S. at 634.

      B.      <u>Transfer for Convenience and Justice</u>

Under § 1404(a), a district court may transfer a civil action to any other district where the action might have been brought originally "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).  The decision to transfer a case is left to the discretion of the district court.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964); *see Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).

In deciding a § 1404(a) motion to transfer, the Court should consider a number of case-specific factors such as, for example, the convenience of the potential transferee forum to the parties and witnesses, the parties' relative bargaining power, and the interests of justice in general.  *Stewart*, 487 U.S. at 29-30; *see Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62-63 (2013); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986) (citing *Van Dusen* , 376 U.S. at 622).  Ordinarily, the Court should give substantial weight in favor of the forum in which the plaintiff chose to file the complaint and should rarely transfer a case from the plaintiff's selected forum.  *In re Nat'l Presto Indus.*, 347 F.3d 662, 663-64 (7th Cir. 2003).  The movant has the burden of establishing that the transfer is "clearly more convenient." *Coffey*, 796 F.2d at 219-20.

Even if the circumstances indicate that a transfer would be clearly more convenient to the parties and witnesses, a court may still refuse to transfer the case if it is not in the interest of justice. *Id.* at 220; *Van Dusen*, 376 U.S. at 625.  "Factors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system." *Coffey*, 796 F.2d at 221.  They include, but are not limited to, the relative congestion of the dockets and the likely speed of going to trial in the respective districts, each court's familiarity with the relevant law, the respective desirability

6

of resolving the dispute in each forum, and the relationship of the community to the controversy. *In re RYZE Claims Sols., LLC*, 968 F.3d 701, 708 (7th Cir. 2020).

However, the analysis changes a bit where there is a valid forum selection clause. There, "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 571 U.S. at 59-60 (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)).[3] Where there is a forum selection clause, the Court must adjust the way it balances the relevant factors in three ways. *Atl. Marine*, 571 U.S. at 63.

First, it must give the plaintiff's choice of forum no weight, and the burden shifts to the plaintiff to show the transfer is unwarranted. *Id.* This is because by agreeing to a specific forum, the plaintiff has made the choice of its preferred forum as a part of the benefit of the contract's bargain, and that initial choice deserves deference. *Id.* Second, the Court should disregard arguments about the parties' private interests that do not favor the selected forum. *Id.* at 64. This is because, by agreeing to a forum selection clause, the parties have waived arguments about inconvenience. *Id.* The Court may only consider arguments relating to public interest. *Id.* Third, the Court should consider in its public interest analysis the choice of law rules of the selected forum rather than those of the original venue. *Id.* at 64. This is to discourage gamesmanship by plaintiffs to secure favorable choice of law rules by filing suit in a forum other than the one to which they agreed. *Id.* at 65.

The *Atlantic Marine* Court concluded:

When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-

---

[3] *Atlantic Marine* clarified the § 1404(a) balancing test where a forum selection clause exists, essentially giving a forum selection clause *almost* dispositive force. Many of the cases Moore cites were decided before *Atlantic Marine* (2013) and are therefore not persuasive. *See, e.g., Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988); *Tuminaro v. Garland Co.*, No. 11-cv-203-bbc, 2011 WL 10501186 (W.D. Wisc. 2011); *IFC Credit Corp. v. Burton Industries, Inc.*, 536 F. 3d 610 (7th Cir. 2008); *Beilfuss v. Huffy Corp.*, 685 N.W.2d 373 (Wis. Ct. App. 2004). The lone post-*Atlantic Marine* case Moore cites, *In re RYZE Claims Sols., LLC*, 968 F.3d 701 (7th Cir. 2020), enforced a forum selection clause because it was not an exceptional case.

selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain.

*Id.* at 66.

### C. Application

Moore has not convinced the Court that the agreed choice of a Delaware forum is one of the "exceptional cases" in which that choice should be disregarded in view of the public interest. Moore initially agreed to a Delaware forum as part of his bargain with Hub, so that initial choice deserves deference. The Court also disregards Moore's claim that litigation in Delaware will be difficult for him. His agreement to a Delaware forum waives any objection based on personal inconvenience. The Court also finds that any inconvenience to witnesses is minimal because the case centers on documents, which are easily transferrable by electronic means, and because the few witnesses that may be needed may be able to appear remotely. And finally, Moore has not convinced the Court that it is in the public interest to disregard his agreement to a Delaware forum.

Moore argues that Illinois courts are more familiar with, and therefore can better apply, the Illinois public policies (1) protecting an Illinois contract from being litigated in a forum not reasonably related to the dispute and (2) limiting covenants not to compete for employees who did not work for an employer for at least two years. However, the Agreement states that Delaware law applies, including Delaware choice of law rules, and Delaware courts are most familiar with that law. And even if Illinois law applied to this dispute, the Court is confident that a federal court in Delaware—which, like all federal courts, is practiced in applying the law of other jurisdictions, *see Atl. Marine*, 571 U.S. at 67—would be well able to apply Illinois law. Furthermore, a Delaware forum is not unreasonable since this dispute involves a Delaware citizen.

Moore has not specifically discussed other public interest factors weighing in favor of keeping

this case here. He does not compare the congestion of the dockets or the speed with which each court could try this case. And while it is true that Illinois has an interest in enforcing a contract made in Illinois where one party is an Illinois citizen, Delaware also has an interest in resolving disputes involving its corporate citizens (and neither probably has any special interest in the fate of a Missouri citizen like Moore). The interest of Illinois does not outweigh Delaware's sufficiently to overcome an agreed forum selection clause. And Illinois's interest is not an "exceptional public interest" justification, just a non-idiosyncratic, routine difference in the law.

Finally, as the Court noted in its show cause order, there is no apparent relation between this dispute and the *Southern District of Illinois*, the contract having been made between residents of Missouri and the *Northern District of Illinois*. The case clearly does not belong *here*.

Moore's real objection boils down to concern over the choice of law to interpret and enforce the Agreement. He speculates that if this case is heard in Delaware, Delaware choice of law rules will apply, and those rules will lead to Delaware substantive law regarding enforcement of the covenant not to compete. He is probably right in light of Delaware's statute allowing parties to a contract to agree that Delaware's law will govern the contract, Del. Code Ann. tit. 6, § 2708, and Delaware's strong commitment to enforcing parties' freedom to contract above other public policies, *New Enter. Assocs. 14, L.P. v. Rich*, 295 A.3d 520, 565 (Del. Ch. 2023). "When parties have ordered their affairs voluntarily through a binding contract, Delaware law is strongly inclined to respect their agreement, and will only interfere upon a strong showing that dishonoring the contract is required to vindicate a public policy interest even stronger than freedom of contract." *Id.* (internal quotations omitted).

Moore would prefer Illinois choice of law rules to apply, which might lead to application of Illinois substantive law in light of Illinois public policies such as the Illinois Freedom to Work Act and the principles underlying that law. *See Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357 (7th Cir. 2015) ("Under Illinois choice-of-law rules, which we apply as a federal court sitting in

9

diversity, a court must honor a contractual choice of law *unless the parties' choice of law would both violate fundamental Illinois public policy* and Illinois has a materially greater interest in the litigation than the chosen state." (emphasis added)).  However, *Atlantic Marine* instructs that, where there is a forum selection clause and the plaintiff does not sue in the forum named in that clause, to discourage forum gamesmanship, the Court should consider *only* the choice of law rules of the selected forum, not the forum where the plaintiff filed suit.  *Atl. Marine*, 571 U.S. at 64, 65.  Thus, Delaware choice of law rules apply to the selection of the substantive law in this case, and a Delaware court is more experienced in applying that law.

In sum, Moore has not convinced the Court that a transfer to the District of Delaware is unwarranted under 28 U.S.C. § 1404(a) in light of the *Atlantic Marine* analytical framework.

## IV. Conclusion

For the foregoing reasons, the Court:

- **DENIES** Hub's motion to dismiss Moore's complaint pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6) (part of Doc. 17);

- **GRANTS** Hub's motion to transfer venue to the United States District Court for the District of Delaware (part of Doc. 17);

- **TRANSFERS** this case pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of Delaware; and

- **DISCHARGES** the Court's October 11, 2023, Order to Show Cause (Doc. 15).

**IT IS SO ORDERED.**
**DATED:  January 11, 2024**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**